No. 23-1380

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

Rocky Mountain Gun Owners, *et al.,*
*Plaintiffs-Appellants*,

v.

Jared S. Polis, in his official capacity
as Governor of the State of Colorado,
*Defendant-Appellee*,

Appeal from the United States District Court
for the District of Colorado
No. 1:23-cv-2563-JLK (Hon. John L. Kane)

**Appellants' Supplemental Brief**

Oral Argument Requested

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
Phone: (303) 205-7870
Email:  barry@arringtonpc.com


*Counsel for Plaintiffs-Appellants*

Michael D. McCoy
D. Sean Nation
Robert A. Welsh
Mountain States Legal
Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
Phone: (303) 292-2021
Email: mmccoy@mslegal.org

# Table of Contents

**Page**

Table of Contents ...................................................... i

Table of Authorities.................................................. ii

Introduction.................................................... 1

I.    The Second Amendment's Plain Text Covers the Right to
      Obtain Possession of Firearms ......................................... 2

II.   *Rahimi* Confirms that All Firearms Regulations Must be
      Justified by Historical Tradition, Including Even the
      Regulations that *Heller* Deemed "Presumptively Lawful." 5

III.  Rahimi Makes Clear That Narrow Laws, Such as Intoxication
      Laws, Cannot Be Analogues For Laws That Broadly Restrict
      Arms Use By The Public Generally. ................................ 9

Conclusion ................................................. 10

# Table of Authorities

**Case**                                                                                   **Page(s)**

*Andrews v. State*,
   50 Tenn. 165 (1871)................................................................. 3

*Curtis v. Univ. of Houston*,
   940 F. Supp. 1070 (S.D. Tex. 1996) ........................................ 4

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ................................................................. 2, 3, 5, 8

*Drummond v. Robinson Twp.*,
   9 F.4th 217 (3d Cir. 2021) ...................................................... 4

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
   597 U.S. 1 (2022) ......................................................... 1, 2, 3, 5, 6, 7, 8, 9

*Oakland Tactical Supply, LLC v. Howell Twp., Michigan*,
   103 F.4th 1186 (6th Cir. 2024)................................................ 4

*Teixeira v. Cnty. of Alameda*,
   873 F.3d 670 (9th Cir. 2017) ................................................... 4

*United States v. Bena*,
   664 F.3d 1180 (8th Cir. 2011) ................................................ 6

*United States v. Duarte*,
   101 F.4th 657 (9th Cir. 2024)................................................. 8

*United States v. Rahimi*,
   144 S. Ct. 1889 (2024) ........................................... 1, 3, 4, 6, 7, 8, 9

**Statutes**

18 U.S.C. § 922(g)(8)................................................................. 1, 6

## Introduction

On July 3, 2024, this Court asked the parties to submit supplemental briefs regarding the Supreme Court's opinion in *United States v. Rahimi,* 602 U.S. –, 144 S. Ct. 1889 (2024). In *Rahimi*, the Court upheld as constitutional 18 U.S.C. § 922(g)(8), which bars certain individuals from "<u>possess[ing]</u> … or … <u>receiv[ing]</u> any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." (emphasis added).

The Supreme Court's decision in *Rahimi* is relevant for three reasons: (1) it involves a statute covering possessing and <u>receiving</u> a firearm—and therefore bolsters Appellants' position on *Bruen* Step 1, by establishing that Appellants have satisfied the plain-text inquiry, *see NYSRPA v. Bruen*, 597 U.S. 1, 17 (2022); (2) *Rahimi* supports the argument that all laws—including even those deemed "presumptively lawful" in *Heller*—must be historically justified, *id*. at 1902; and (3) the government continues to bear the heavy burden of establishing a "relevantly similar" historical analogue to the regulation that it seeks to defend. *Id*. at 1898.

1

In sum, the Supreme Court's decision in *Rahimi* comports squarely with Appellants' earlier briefing in the case, and further supports this Court's entry of an injunction.

## I.    The Second Amendment's Plain Text Covers the Right to Obtain Possession of Firearms.

Long before *Rahimi*, the Supreme Court conducted its ordinary plain-text analysis in *District of Columbia v. Heller*, 554 U.S. 570, 576–600 (2008). The *Heller* Court held that the Second Amendment's "textual elements": (1) "guarantee the individual right to <u>possess</u> and carry weapons," *id.* at 592 (emphasis added); (2) protect the rights of "all Americans," *id.* at 580; and (3) "extend[] prima facie, to all instruments that constitute bearable arms," *id.* at 582.

Nothing about *Rahimi* disturbs this formulation. Indeed, the Supreme Court did not directly address the plain-text analysis in *Rahimi*. There was no need. The Court's precedents clearly established that a statute governing the "possessing" or "receiving" of a firearm is covered by the Second Amendment's plain text. *Heller*, 554 U.S. at 592; *Bruen*, 597 U.S. at 32. In other words, *Rahimi* demonstrated that the plain-text inquiry was never intended to be a significant obstacle for

challengers to overcome. Rather, the inquiry simply ensures that courts apply *Bruen* to "firearms regulations," and not other types of laws.

Here, as in *Rahimi*, it is clear that Appellants' inability to possess their purchased firearms is covered by the plain text. *Rahimi*, in fact, referred broadly to conduct that relates to "arms-bearing." 144 S. Ct. at 1897 ("[W]hen the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to 'justify its regulation.'" (quoting *Bruen*, 597 U.S. at 24)); *id.* at 1896 (*Bruen* analysis applies to all "firearm regulation[s]"). It is also clear that the Waiting Period Act prevents Appellants from exercising their right to possess their firearms for three days. For this reason, characterizing the Waiting Period Act as a restriction on firearm acquisition rather than possession does nothing to alter the plain-text analysis, since the right to acquire arms is inherent to the right to possess them. In a case that *Heller* cited three times approvingly, 554 U.S. at 608, 614, 629, the Tennessee Supreme Court held that "[t]he right to keep arms, necessarily involves the right to purchase them," *Andrews v. State*, 50 Tenn. 165, 178 (1871). More recently, the Third Circuit held that the Second Amendment

3

protects the right to purchase firearms, *Drummond v. Robinson Twp.*, 9 F.4th 217, 226–29 (3d Cir. 2021), and the Ninth Circuit reasoned that "[c]ommerce in firearms is a necessary prerequisite to keeping and possessing arms for self-defense," *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) (en banc); *cf. Curtis v. Univ. of Houston*, 940 F. Supp. 1070, 1073 (S.D. Tex. 1996) ("plain text" of the First Amendment had no implied limit that would carve out public employees); *see also Oakland Tactical Supply, LLC v. Howell Twp., Michigan*, 103 F.4th 1186, 1201 (6th Cir. 2024) (Kethledge, J., dissenting) ("The First Amendment guarantee of a free press . . . implies a right to buy the inks and paper necessary for printing newspapers.").

A government-imposed delay on the ability to take possession of a firearm due to a waiting period—whether that delay is for 3-days or 3-years—implicates the plain text of the Second because it relates to arms bearing and is a firearms regulation. *Cf. Rahimi*, 144 S. Ct. at 1902 (analyzing *Bruen* Step 2 even though § 922(g)(8) "was temporary as applied to Rahimi"). Moreover, because the right to acquire arms is inherent to the right to possess arms—or at least a necessary

4

concomitant of that right—even if the Waiting Period Act is characterized as an acquisition restriction, "the Constitution presumptively protects" Appellants' conduct, and the State must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

## II. Rahimi Confirms that All Firearms Regulations Must be Justified by Historical Tradition, Including Even the Regulations that Heller Deemed "Presumptively Lawful."

*Rahimi* squarely confirms *Bruen's* treatment of "presumptively lawful" laws, which must nevertheless be evaluated by courts under Step 2 of *Bruen*. In discussing a category of "presumptively" lawful regulations, the *Heller* Court acknowledged that it did "not provid[e] extensive historical justification for those regulations," but nevertheless confirmed that such underpinnings were appropriate, and that "there will be time enough to expound upon the historical justifications for" the regulations in a later case. *Heller,* 554 U.S. at 635.

*Rahimi* confirms all of this by emphasizing *Bruen*'s broad, general rule that:

> the appropriate [Second Amendment] analysis involves
> considering whether the challenged regulation is consistent

with the principles that underpin our regulatory tradition. A court must ascertain whether the new law is "relevantly similar" to laws that our tradition is understood to permit, "apply[ing] faithfully the balance struck by the founding generation to modern circumstances."

144 S. Ct. at 1898 (internal citations omitted and emphasis added); *see also id.* at 1897 ("In *Bruen*, we directed courts to examine our 'historical tradition of firearm regulation' to help delineate the contours of the right.") (quoting *Bruen*, 597 U.S. at 17)).

Indeed, *Rahimi* is notable for what it did <u>not</u> decide—because some lower courts had had little trouble upholding 18 U.S.C. § 922(g)(8) by reasoning that it is analogous to the "presumptively lawful" prohibitions for felons and the mentally ill. *See, e.g., United States v. Bena*, 664 F.3d 1180, 1184 (8th Cir. 2011) ("[T]his statute—like prohibitions on the possession of firearms by violent felons and the mentally ill—is focused on a threat presented by a specific category of presumptively dangerous individuals.").

But the *Rahimi* Court conspicuously side-stepped the easy way out. Instead, the Court analyzed § 922(g)(8) precisely the same way that it analyzed the handgun ban in *Heller*, the carry restriction in *Bruen*, and

the sensitive-place restriction in *Bruen*—by "considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi,* 144 S. Ct. at 1898.

In other words, there are no firearms regulations that have blanket immunity from *Bruen*-style analysis, or *Rahimi* would have said so. Instead, it said the opposite—that *Bruen* requires that the "only" way that the government can justify a firearms regulation is with historical tradition. *Rahimi*, 144 S. Ct. at 1896 ("In *Bruen*, we explained that <u>when a firearm regulation is challenged</u> under the Second Amendment, the Government must show that the restriction is consistent with the Nation's historical tradition of firearm regulation.") (internal quotation marks omitted) (emphasis added); *Bruen*, 597 U.S. at 17 ("<u>Only</u> if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.") (quotation marks omitted and emphasis added); *id.* at 34 ("<u>Only</u> if respondents carry that burden can they show that the preexisting right codified in the Second

Amendment . . . does not protect petitioners' proposed course of conduct.") (emphasis added).

*Bruen* further made it unmistakably clear that its historical test applies to the "presumptively lawful" regulations that it identified in *Heller*, including the category of "laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626–27 & n.26. *Bruen* itself dealt with the government's "attempt to characterize New York's proper-cause requirement as a 'sensitive-place' law"—another one of *Heller's* presumptive "categories." *Bruen* 597 U.S. at 30. Yet after consulting the historical record, the Court wrote that "there is <u>no historical basis</u> for New York to effectively declare the island of Manhattan a 'sensitive-place,'" and struck down the law. *Id.* at 30-31 (emphasis added). "Had the Court in *Bruen* endorsed simply deferring to *Heller's* 'presumptively lawful' footnote, the outcome of that case would have been much different." *United States v. Duarte*, 101 F.4th 657, 669 (9th Cir. 2024).

The Supreme Court has clearly and repeatedly defined its Second Amendment test. *See Bruen*, 597 U.S. at 17, 24; *Rahimi*, 144 S. Ct. at

8

1898. The Court has never articulated a wholesale exception for the regulations that it deemed "presumptively lawful" in *Heller*. Rather, the Court has expressly stated that "a court [may] conclude that the individual's conduct falls outside the Second Amendment's" scope "[o]nly if a firearm regulation is consistent with this Nation's historical tradition." *Bruen*, 597 U.S. at 17 (emphasis added). Thus, even if the Waiting Period Act is deemed to be a restriction on the commercial sale of arms, the State still must provide "historical justifications," just like they would have to do with any other firearms regulation.

## III. Rahimi Makes Clear That Narrow Laws, Such as Intoxication Laws, Cannot Be Analogues For Laws That Broadly Restrict Arms Use By The Public Generally.

The Waiting Period Act contradicts our nation's tradition of firearm regulation. *Rahimi* confirms it. *Rahimi* made clear that "narrow" laws, such as the intoxication laws that the State offers as analogues, are distinctly dissimilar from laws that "broadly restrict arms use by the public generally," such as the Waiting Period Act. *Rahimi,* 144 S. Ct. at 1901; *id.* at 1898 ("Why and how the regulation burdens the right are central to this inquiry."). That is because "our Nation's tradition of

9

firearm regulation distinguishes citizens who have been found to pose a credible threat to the physical safety of others from those who have not." *Id.* at 1902. So while surety laws were "an appropriate analogue" for Section 922(g)(8)'s "narrow" restriction that applies to particular individuals, they were "not a historical analogue for a broad prohibitory regime like New York's" licensing regime at issue in *Bruen* that applied to the public generally. *Id.* at 1902. For the same reason, intoxication laws—which were narrow and applied only to intoxicated individuals— could never justify the Waiting Period Act—which "broadly restrict[s] arms use by the public generally." *Id.* at 1901. *Bruen*'s heavy burden therefore remains. *Id.* at 1898 ("Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding.").

## Conclusion

Rather than undermine *Bruen, Rahimi* only further solidifies it. For the reasons stated in Appellants' principal briefs, the Waiting Period Act remains a clear unconstitutional burden on the rights of law-abiding Coloradans, and this Court should enter an injunction against it.

DATED this 24th day of July 2024.

Respectfully submitted,

*/s/ D. Sean Nation*
D. Sean Nation
Michael D. McCoy
Robert A. Welsh
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
Phone: (303) 292-2021
Email: snation@mslegal.org

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
Phone: (303) 205-7870
Email: barry@arringtonpc.com

*Counsel for Appellants*

## Certificate of Compliance

This supplemental brief complies with the Court's July 3, 2024 Order requesting supplemental briefing by the parties of no more than 10 pages. It also fulfills the requirements of the Fed. R. App. P. 27(d)(1) and 32 and Circuit Rule 32 because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. It contains 1,904 words.

DATED this 24th day of July 2024:

*/s/ D. Sean Nation*
D. Sean Nation

## Certificate of Electronic Filing

In accordance with this Court's CM/ECF User's Manual and Local Rules, I hereby certify that the foregoing has been scanned for viruses with Sentinel One, updated July 24th, 2024, and is free of viruses according to that program.

In addition, I certify that all required privacy redactions have been made and the electronic version of this document is an exact copy of the written document to be filed with the Clerk.

DATED this 24th day of July 2024.

*/s/ D. Sean Nation*
D. Sean Nation

## Certificate of Service

I certify that on July 24, 2024, I caused the foregoing to be filed through the Court's CM/ECF system, with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit through the Court's CM/ECF system. I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system and that a PDF copy of this motion will be emailed to opposing counsel immediately after it is filed.

DATED this 24th day of July 2024.

*/s/ D. Sean Nation*
D. Sean Nation
*Counsel for Appellants*