23-1380
IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

JARED POLIS, in his official capacity as Governor of the State of Colorado,

Defendant – Appellee,

v.

ROCKY MOUNTAIN GUN OWNERS and ALICIA GARCIA,

Plaintiffs – Appellants,

On Appeal from the United States District Court, District of Colorado
The Honorable John L. Kane
Senior District Judge
District Court Case No. 23-cv-02563-JLK

**APPELLEE'S SUPPLEMENTAL RESPOSNE BRIEF FOLLOWING**
***UNITED STATES V. RAHIMI*, NO. 22-915**

PHILIP J. WEISER
Attorney General
MICHAEL T. KOTLARCZYK *
Assistant Solicitor General
MATTHEW J. WORTHINGTON*
Assistant Attorney General

Colorado Department of Law
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone:  720-508-6187
E-Mail:  mike.kotlarczyk@coag.gov;
matt.worthington@coag.gov
*Counsel of Record

*Attorneys for Governor Polis*

I. Introduction

The Supreme Court's recent opinion in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), is a serious blow to the Plaintiffs' efforts to enjoin Colorado's Waiting Period Act. *Rahimi* makes clear that a facial challenge, like Plaintiffs', "is the most difficult challenge to mount successfully," *id.* at 1898 (quotations omitted); that certain firearm regulations remain presumptively lawful under the Court's Second Amendment jurisprudence; and that the Second Amendment is not "trapped in amber" and limited to allowing only the regulations that existed in the 1790s, *id.* at 1897. And *Rahimi* did not even address the plain text of the Second Amendment, which the district court correctly held is not implicated by Colorado's Waiting Period Act because the law does not impact the Plaintiffs' ability to "keep" or "bear" arms.

Plaintiffs' efforts to avoid the clear import of *Rahimi* are unavailing. Plaintiffs read *Rahimi* as saying things it does not and repeatedly attribute quotations to *Rahimi* that are found nowhere in the opinion. While the district court's denial of a preliminary injunction was correct under the standard articulated in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), *Rahimi* provides even further support that Colorado's Waiting Period Act is constitutional under the Second Amendment.

II. *Rahimi* **does not support Plaintiffs' plain text arguments.**

In denying the preliminary injunction, the district court held that Plaintiffs' challenge failed at the first step of *Bruen* because Colorado's Waiting Period Act did not implicate the plain text of the Second Amendment. *See* App. Vol. 3 at 750-55. *Rahimi* did not address *Bruen*'s first step, because the conduct the defendant sought to engage in

1

there—possessing a firearm—clearly implicates the Second Amendment's plain text. The Court thus proceeded to address *Bruen*'s second step and concluded that 18 U.S.C. § 922(g)(8) "is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 144 S. Ct. at 1898. *Rahimi* leaves undisturbed the district court's conclusion that the Waiting Period Act does not implicate the Second Amendment's plain text.

      Plaintiffs are of two minds about this. On the one hand, Plaintiffs correctly acknowledge that the Supreme Court did not even "address the plain-text analysis in *Rahimi*" because "[t]here was no need" given how clearly 18 U.S.C. § 922(g)(8) implicates the right to keep and bear arms. Pls.' Supp. Br. 2. But Plaintiffs also argue that *Rahimi* somehow "bolsters [their] position on *Bruen* Step 1." *Id.* at 1.

      To support this internally contradictory argument—that *Rahimi* bolsters their argument while simultaneously saying nothing about it—Plaintiffs miscite the Supreme Court's own holdings. According to Plaintiffs, "[t]he Court's precedents clearly established that a statute governing the 'possessing' or 'receiving' of a firearm is covered by the Second Amendment's plain text." Pls.' Supp. Br. 2 (quoting *Bruen* & *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008)). But in neither of the cases cited by Plaintiffs did the Court use the word "receiving" to describe the right protected by the Second Amendment. The quoted word simply does not appear in the Supreme Court's Second Amendment cases when describing the scope of the Amendment's plain text.[1]

---

[1] To the extent Plaintiffs meant that 18 U.S.C. § 922(g)—rather than *Heller* or *Bruen*— uses the word "receiving," that doesn't help Plaintiffs either, as the opinion in *Rahimi* does not even mention that fact.

2

Plaintiffs' attempt to link "possessing" and "receiving" despite the Supreme Court never having done so is telling. As argued in the Governor's Answer Brief, *Heller* and *Bruen* lack any indication that "receiving" firearms, especially through commercial sales, is covered by the Second Amendment. *See* Ans. Br. 16-23. The same can now also be said of *Rahimi*. *Heller* engaged in extensive linguistic inquiry into the meaning of the words "keep" and "bear." 554 U.S. at 581-92. But neither *Heller*, *Bruen*, nor *Rahimi* suggest that acquisition falls within the meanings of those words, let alone commercial acquisition, let alone immediate commercial acquisition. *See McRorey v. Garland*, 99 F.4th 831, 838 (5th Cir. 2024) ("[O]n its face 'keep and bear' does not include purchase . . . . [A]n implication is not the same thing as being covered by the plain text of the amendment.").

Finally, Plaintiffs also attempt to read *Bruen*'s initial step out of existence altogether. According to Plaintiffs, the plain text inquiry is meant only to "ensure[] that courts apply *Bruen* to 'firearms regulations,' and not other types of laws." Pls.' Supp. Br. 3. Surely not. There would have been no need for *Heller* to devote substantial analysis to explaining the meaning of "keep" and "bear" if all the Court meant was: these are firearm regulations, and not, say, environmental laws. This is an absurd reading of these cases and ignores the repeated emphasis that the Court has placed on the plain text of the Second Amendment since *Heller*. *See, e.g.*, *Rahimi*, 144 S. Ct. at 1910-11 (Kavanaugh, J., concurring) ("The first and most important rule in constitutional interpretation is to heed the text—that is, the actual words of the Constitution—and to interpret that text according to its ordinary meaning as originally understood.").

### III. *Rahimi* confirms the ongoing validity of "presumptively lawful" firearm regulations, including regulations on commercial sales.

Plaintiffs next err by misinterpreting *Rahimi*'s discussion of "presumptively lawful regulatory measures." This Court previously recognized that "six of the nine Justices pointed out that *Bruen* was not casting any doubt" on the presumptively lawful category of regulations. *Vincent v. Garland*, 80 F.4th 1197, 1201-02 (10th Cir. 2023), *vacated in light of Rahimi*, 2024 WL 3259668. *Rahimi* now makes clear that eight justices continue to recognize "that many . . . prohibitions [on firearm possession in the home], like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Rahimi*, 144 S. Ct. at 1902 (quoting *Heller*, 554 U.S. at 626, 627, n.26). This puts to rest Plaintiffs' argument in their reply brief that only a "plurality" in *Heller* recognized the presumptively lawful category. *See* Reply Br. at 11 (asserting that footnote 26 in *Heller* "had the votes of only four Justices, and is thus not binding precedent.").[2]

In their attempt to minimize the import of this part of *Rahimi*, Plaintiffs again misattribute a quotation to the Supreme Court. According to Plaintiffs, *Rahimi* "said . . . that *Bruen* requires that the 'only' way that the government can justify a firearms regulation is with historical tradition." Pls.' Supp. Br. 7 (citing *Rahimi*, 144 S. Ct. at 1896). *Rahimi* just does not say this. The quoted word "only" does not appear on the cited page and does not appear elsewhere in the opinion in the context Plaintiffs cite.

---

[2] Plaintiffs were demonstrably incorrect on this point even before *Rahimi*. The five-justice majority in *Heller* joined Justice Scalia's majority opinion in full.

Plaintiffs may have intended to cite *Bruen*, which described the second part of its test as being met "[o]nly if a firearm regulation is consistent with this Nation's historical tradition." *Bruen*, 597 U.S. at 17. But the error serves to highlight what *Rahimi* did not say—*Rahimi* did not state that presumptively lawful regulations require grounding in history and tradition. Instead, the eight-justice majority recognized that "many" laws that "forbid firearm possession" are "presumptively lawful." *Rahimi*, 144 S. Ct. at 1902. *Rahimi*, like *Heller* before it, cited no history in coming to this conclusion.

A recent decision from the District of New Mexico—denying a preliminary injunction against New Mexico's seven-day waiting period for commercial firearm sales—shows that *Rahimi* confirms the ongoing validity of the presumptively lawful categories from *Heller*. *See Ortega v. Lujan Grisham*, --- F. Supp. 3d ---, 2024 WL 3495314 (D.N.M. July 22, 2024). Like in this case, the court in *Ortega* found that New Mexico's waiting period did not implicate the Second Amendment's plain text and that, even if it did, the law was consistent with the Nation's historical tradition of firearm regulation. *Id.* at *40. The district court also concluded that the waiting period law was "presumptively Constitutional, because it does not implicate conduct covered by the Second Amendment's plain text and is a longstanding condition or qualification on the commercial sale of arms." *Id.* at *35. Rejecting Plaintiffs' argument that presumptively lawful regulations have been subsumed by *Bruen*'s two-part test, the court acknowledged that the "suggestion from the Supreme Court [in *Rahimi*] that *Heller*'s presumptively lawful categories remain intact" provides "no sound reason to conclude that *Bruen* abrogated *Heller*'s exception for laws imposing conditions and qualifications on the

5

commercial sale of arms." *Id.* at *33-34; *accord McRorey*, 99 F.4th at 836 ("*Bruen* did nothing to disturb" the presumptive lawfulness of commercial regulations). Such conditions and qualifications, like the Waiting Period Act, remain presumptively lawful.

Plaintiffs next argue "*Rahimi* is notable for" not deciding the case on the grounds that 18 U.S.C. § 922(g)(8) is presumptively lawful. Pls.' Supp. Br. 6. But the government did not even argue that § 922(g)(8) was valid on those grounds. *See* Br. for the United States, *United States v. Rahimi*, 2023 WL 5322645. It is thus hardly notable that the Court did not decide an issue not raised by the parties. To the contrary, the notable aspect of the Court's invocation of "presumptively lawful" regulations was that even though the parties did not argue that § 922(g)(8) was presumptively lawful, the Court went out of its way to acknowledge the continuing validity of the "presumptively lawful" categorization of regulations. *Rahimi*, 144 S. Ct. at 1902. This includes "conditions and qualifications on the commercial sale of arms." *See id.* at 1923 (Kavanaugh, J., concurring) ("'laws imposing conditions and qualifications on the commercial sales of arms' are presumptively constitutional") (quoting *Heller*).

Additionally, Plaintiffs' interpretation of the "presumptively lawful" category of regulations effectively removes the presumption altogether. If, as Plaintiffs argue, "presumptively lawful" regulations must independently satisfy *Bruen*'s two-step framework, then there is no value in calling out certain categories of regulations as presumptively lawful. Plaintiffs' argument not only renders the word "presumptively" superfluous, it renders the entire discussion of "presumptively lawful" regulations—discussed in *Heller*, in multiple concurrences in *Bruen*, and in *Rahimi*—pointless. The

Court should not treat a repeated pronouncement from the Supreme Court so lightly. *See, e.g.*, *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1243 (10th Cir. 2008) (Gorsuch, J.) ("[O]ur job as a federal appellate court is to follow the Supreme Court's directions, not pick and choose among them as if ordering from a menu.").

### IV. *Rahimi* acknowledges that historical laws temporarily removing arms from individuals are relevantly similar to modern laws.

Finally, if the Court does proceed to the second step of *Bruen*, *Rahimi* also lends further support to the historical analogues provided by the Governor. The district court found that historical laws against armed intoxication and firearms licensing were relevantly similar to Colorado's Waiting Period Act. App. Vol. 3 at 766-72. Both sets of laws were temporary in nature—until the individual was no longer intoxicated, for example, or until a firearms license issued. *Rahimi* also stressed that § 922(g)(8), like historical surety laws, was "of limited duration" and "temporary." *Rahimi*, 144 S. Ct. at 1902. So, too, with the Waiting Period Act, as individuals can take possession of purchased firearms three days after purchase. Unlike the law at issue in *Bruen*, which "effectively presumed that no citizen had [a Second Amendment] right, absent a special need," *id.*, the Waiting Period Act "presupposes that all individuals may exercise their Second Amendment right to possess and carry firearms." *Ortega*, 2024 WL 3495314, at *35. Like historic intoxication and licensing laws, a temporary delay is thus justified to prevent impulsive acts of firearms violence.

### V. Conclusion

The Court should affirm the district court's denial of a preliminary injunction.

7

Dated: August 7, 2024

        PHILIP J. WEISER
        Attorney General

        */s/ Michael T. Kotlarczyk*
        *Michael T. Kotlarczyk*, Assistant Solicitor General\*
        *Matthew J. Worthington*, Assistant Attorney General\*
        1300 Broadway, 6th Floor
        Denver, CO 80203
        Telephone: (720) 508-6124
        Email: mike.kotlarczyk@coag.gov;
        matt.worthington@coag.gov

        *Attorneys for Governor Jared S. Polis*

        \*Counsel of Record