No. 23-1380

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

Rocky Mountain Gun Owners, *et al.,*
*Plaintiffs-Appellants*,

v.

Jared S. Polis, in his official capacity
as Governor of the State of Colorado*,*
*Defendant-Appellee,*

Appeal from the United States District Court
for the District of Colorado
No. 1:23-cv-2563-JLK (Hon. John L. Kane)

**Appellants' Response to Appellee's Supplemental Brief**

Oral Argument Requested

| | |
|---|---|
| Barry K. Arrington | Michael D. McCoy |
| Arrington Law Firm | D. Sean Nation |
| 4195 Wadsworth Boulevard | Robert A. Welsh |
| Wheat Ridge, Colorado 80033 | Mountain States Legal |
| Phone: (303) 205-7870 | Foundation |
| Email:  barry@arringtonpc.com | 2596 South Lewis Way |
| | Lakewood, Colorado 80227 |
| | Phone: (303) 292-2021 |
| *Counsel for Plaintiffs-Appellants* | Email: mmccoy@mslegal.org |

## I. The plain text of the Second Amendment covers the right to possess and receive firearms.

In *United States v. Rahimi*, the Supreme Court had little trouble reaching the merits with respect to 18 U.S.C. §922(g)(8), which targets possessing or receiving a firearm. 602 U.S. ----, 144 S. Ct. 1889 (2024). And just like § 922(g), Colorado's Waiting Period Act temporarily prevents individuals from possessing or receiving their firearms.

To dodge this clear conclusion, Appellee attempts to insert a limitation into the plain text analysis by arguing that the plain text "does not confer a right to immediately acquire firearms." Appellee's Suppl. Br. 5. But that is a red herring, and more appropriately considered an argument about the merits of Appellants' claims. (Otherwise Step 1 and Step 2 of *Bruen* would collapse into a single question of whether the Second Amendment conferred a certain right on an individual). Because the Second Amendment protects the act of possessing and receiving arms, that is the end of the plain-text analysis. Otherwise, Appellee could chip away at *Bruen* by always narrowly characterizing the right at issue. As the Court wrote in *Rahimi*, *Bruen*'s Step 2 applies to all "firearms regulations."

Doctrinally, there is no escaping this conclusion. In *Heller*, for instance, the Court explained that it would "begin our textual analysis," 554 U.S. at 578, "[b]efore turning to limitations upon the individual right." *Id.* at 595 (emphasis added). It was thus only after the Court concluded that the "textual elements" cover the "right to possess and carry weapons," *id.* at 592, that the Court considered whether the limitations imposed by the

1

regulations—i.e., the ban on "handgun possession in the home" and the "require[ment] that any lawful firearm in the home be disassembled or bound by a trigger lock," *id.* at 628—were historically justified.

Similarly, in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022), the Court moved quickly through the plain-text analysis. It determined that the petitioners, as "two ordinary, law-abiding, adult citizens—are part of 'the people,'" *id.* at 31, that handguns are protected arms, *id.* at 32, and that the "definition of 'bear' naturally encompasses public carry." *Id.* The Court then "turn[ed] to respondents' historical evidence" to consider limitations on that right. *Id.* at 34.

The Supreme Court's precedents require that this Court consider in the plain-text analysis only whether the text covers the possession of bearable arms by law-abiding citizens. Any limitation on that conduct—including a law prohibiting that conduct for three days—must be justified with historical tradition in the historical analysis.

**II.    The Waiting Period Act is not a commercial regulation, and there is nothing "presumptive" about its lawfulness.**

Appellee relies on dicta in *Heller* to support the contention that the Waiting Period Act is presumptively lawful because it merely "impos[es] conditions and qualifications on the commercial sale of firearms." *Heller*, 554 U.S. at 626–27. But the Waiting Period Act is not truly part of any commercial transaction. It is not a "condition" on whether a firearms dealer may sell a firearm. It has nothing to do with the "qualifications" of a firearms dealer

2

to sell firearms. It serves no commercial purpose, and the Colorado Legislature offered none. The Act merely targets the "transfer" of a firearm to a customer after a purchase, not the underlying sale of that firearm. As previously noted, Appellee emphasizes that the benefit of the Waiting Period Act is to reduce impulsive gun violence by the *purchaser*— not a need for merchants to have more time to conduct background checks or engage in other relevant commercial activity related to the transaction.

For this reason, the waiting period is nothing more than an overly broad and constitutionally infirm law that Appellee is attempting to pass off as a commercial regulation. But what commercial purpose does it serve to force a gun dealer to wait three days to transfer a firearm to an individual who has already passed a background check? None. Instead, this law is simply an effort to make an end-run around the Second Amendment.

In 2021, the Fourth Circuit rejected a similar effort by the federal government to portray prohibitions on the sale of handguns to 18–20-year-olds as being presumptively lawful conditions on commercial sales. "A condition or qualification on the sale of arms [by sellers] is a hoop someone must jump through to sell a gun, such as obtaining a license, establishing a lawful premise, or maintaining transfer records." *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 416 (4th Cir. 2021) (vacated as moot, 34 F.4th 322). By contrast, restrictions that operate as a flat bar on a purchaser's right to obtain a gun are not "conditions and qualifications on the sale of arms."

But even if the Waiting Period Act is determined to be a commercial regulation, it still must survive the *Bruen* analysis—Appellee still must establish that the law is consistent with this Nation's historical tradition. *See Bruen*, 597 U.S. at 17, 24; *Rahimi*, 144 S. Ct. at 1896. As previously noted, the Supreme Court has never articulated an exception to the requirement that a historical analogue be established for those regulations deemed "presumptively lawful" in *Heller*. Instead, the Court has expressly stated that "a court [may] conclude that the individual's conduct falls outside the Second Amendment's" scope "[o]nly if a firearm regulation is consistent with this Nation's historical tradition." *Bruen*, 597 U.S. at 17. This was reaffirmed in *Rahimi* without any categorical exceptions being listed. *Rahimi*, 144 S. Ct. at 1896.

### III. The intoxication laws that Appellee proffers as a historical analogue are not "relevantly similar" to the Waiting Period Act.

There is no historical tradition—either at the time of the Founding or Reconstruction—consistent with firearms being regulated in this manner. Despite Appellee's best efforts to fit the square peg of the Waiting Period Act into the round hole of intoxication laws, the simple fact is that they are not analogous in any way. "A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Rahimi*, 602 U.S. ----, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 29).

Appellee asserts that the Founding era intoxication laws "sought to curb the impulsive use of firearms," and is thus analogous to the Waiting Period Act. Appellee's Suppl. Br. 8. But this is a failed analogy. The intoxication laws applied only to those who were drunk, and only for as long as they were under the influence of alcohol. And the reasoning behind the intoxication laws was much more than impulsivity—even the most cautious of purchasers should not handle a deadly weapon when their senses are dulled by liquor.

The Waiting Period Act, however, applies to everyone—even though there is no common condition that they all share that would make them any more prone to impulsivity than anyone else. There is simply nothing "relevantly similar" about these laws, the individuals impacted by them, or the underlying conduct they are intended to control.

### IV. The Waiting Period Act is unconstitutional both on its face and as applied.

Plaintiffs challenge the Waiting Period Act both on its face and as applied. Complaint (ECF No. 1 at 7). Regarding the facial challenge, Appellee alleges that the Appellants' case fails because they cannot show that the Waiting Period Act is unconstitutional in all its applications. In support of this contention, Appellee relies on the *Rahimi* decision. But *Rahimi* is distinguishable on this front because it dealt with the constitutionality of a federal statute—18 U.S.C. §922(g)(8)—which allows for the disarmament of *specific individuals* who, after notice and a hearing, are determined to "pose a credible threat to the physical safety of others." *Rahimi*, 602 U.S. ----, 144 S. Ct.

at 1896. In upholding §922(g)(8), the Supreme Court held that—at least as it applied to Mr. Rahimi, who a court had previously determined posed a threat to others—the law was relevantly similar to Founding era surety laws and restrictions on "going armed." *Id.* at 1901.

But whereas §922(g)(8) applies to a specific and very limited group of people determined after notice and a hearing to pose a threat to the safety of others, the Waiting Period Act applies to everyone, without any notice or opportunity to be heard, and without any requirement that the state produce even an iota of evidence of impulsivity.[1]

Because it applies generally and does not make any effort to distinguish between the cautious and the impulsive, the Waiting Period Act is unconstitutional in all of its applications.

## Conclusion

For these reasons, and for the reasons stated in Appellants' previous briefs, the Waiting Period Act remains a clear unconstitutional burden on the rights of law-abiding Coloradans, and this Court should enter an injunction against it.

---

[1] Nor would Appellee be able to defeat a facial challenge merely by pointing to a single individual for whom the application of a law would accidentally be non-injurious. A facial challenge to a law banning all seditious speech does not fail because it would be constitutional as applied to mutes. Nor would a facial challenge to a law banning all firearms fail because it would constitutionally apply to prisoners in jail. Facial challenges address the ordinary application of a law, not extremes.

DATED this 7th day of August 2024.

                                    Respectfully submitted,

                                    */s/ Michael D. McCoy*
Michael D. McCoy
D. Sean Nation
Robert A. Welsh
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
Phone: (303) 292-2021
Email: snation@mslegal.org

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
Phone: (303) 205-7870
Email:  barry@arringtonpc.com

*Counsel for Appellants*

**Certificate of Compliance**

This supplemental response brief complies with the Court's July 3, 2024, Order allowing for supplemental response briefing by the parties of no more than seven pages. It also fulfills the requirements of the Fed. R. App. P. 27(d)(1) and 32 and Circuit Rule 32 because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 13-point Times New Roman font. It contains 1,473 words.

DATED this 7th day of August 2024:

                                                            */s/ Michael D. McCoy*
                                                            Michael D. McCoy

**Certificate of Electronic Filing**

In accordance with this Court's CM/ECF User's Manual and Local Rules, I hereby certify that the foregoing has been scanned for viruses with Sentinel One, updated August 7th, 2024, and is free of viruses according to that program.

In addition, I certify that all required privacy redactions have been made and the electronic version of this document is an exact copy of the written document to be filed with the Clerk.

DATED this 7th day of August 2024.

*/s/ Michael D. McCoy*
Michael D. McCoy

## Certificate of Service

    I certify that on August 7, 2024, I caused the foregoing to be filed through the Court's CM/ECF system, with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit through the Court's CM/ECF system. I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system and that a PDF copy of this motion will be emailed to opposing counsel immediately after it is filed.

DATED this 7th day of August 2024.

                                              */s/ Michael D. McCoy*
                                              Michael D. McCoy
                                              *Counsel for Appellants*